534 A.2d 1333

**Jehu COX**

v.

**STATE of Maryland.**

**No. 17, Sept. Term, 1987.**

Court of Appeals of Maryland.

Jan. 6, 1988.

John H. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

The Petitioner Jehu Cox ("Cox") was convicted of attempted voluntary manslaughter under a criminal information charging attempted murder. He contends that attempted voluntary manslaughter is not a crime and thus his conviction should be set aside. We disagree and hold that attempted voluntary manslaughter is a crime under the common law of Maryland.

# I

## Facts

The significant facts are undisputed. On December 12, 1984, Michael Sewell, Pierre Haile and another friend named "Ronald" were walking along Wheeler Avenue in Baltimore City. Pierre Haile had a handgun in his possession. Cox, who was also carrying a handgun, and his companion approached the three men on the same side of the street. An argument ensued which culminated in Cox and Haile discharging their guns at each other. The bullet fired by Cox struck Michael Sewell.

Cox was charged by criminal information of attempted murder and related offenses, including assault and battery, unlawfully carrying a handgun and the use of a handgun in the commission of a crime of violence. He was tried by a jury in the Circuit Court for Baltimore City (Johnson, J.) and was acquitted of attempted murder in the first and second degree, but convicted of attempted manslaughter, assault, carrying a handgun and use of a handgun in the commission of a crime of violence. The assault and carrying a handgun counts were merged and Cox received a ten year sentence for attempted manslaughter and a consecutive twenty-year sentence for use of a handgun in a crime of violence.

An appeal was timely filed to the Court of Special Appeals, and that Court affirmed the convictions. *Cox v.*

*State,* 69 Md.App. 396, 518 A.2d 132 (1986). We granted Cox's petition for writ of *certiorari* which presented the following issues:

(1) Is the conviction and sentence for attempted voluntary manslaughter invalid because no such crime exists under the common law of Maryland?

(2) Does the conviction for use of a handgun in the commission of a crime of violence fail for lack of a valid predicate crime of violence?

## II

### *Attempt*

The law of attempt exists because "there is just as much need to stop, deter and reform a person who has unsuccessfully attempted or is attempting to commit a crime than one who has already committed such an offense." *Young v. State,* 303 Md. 300, 301, 493 A.2d 352, 353 (1985) (citing W. LaFave & A. Scott, *Handbook on Criminal Law* § 59 at 426 (1972) and Stuart, *The Actus Reus in Attempts,* 1970 Crim.Law.Rev. 505, 511).

The idea that an attempt to commit an offense is a crime came relatively late in Anglo–American jurisprudence. The early history of the crime of attempt was traced by the Court of Special Appeals in *Gray v. State,* 43 Md.App. 238, 403 A.2d 853, *cert. denied,* 286 Md. 747 (1979):

"[The crime of attempt] had its origins in the Court of Star Chamber, during Tudor and early Stuart times. Its crystallization into its present form, however, is generally traced to the case of *Rex v. Scofield,* Cald. 397, in 1784.... The doctrine was locked into its modern mold by 1801 with the case of *Rex v. Higgins,* 2 East 5.... In the wake of *Scofield* and *Higgins,* it was clear that *an attempt to commit any felony or misdemeanor, of common law origin or created by statute, was itself a misdemeanor." Id.* at 239, 403 A.2d 853 (emphasis added; footnotes omitted).

We first recognized a criminal attempt as a common law misdemeanor in *Mitchell v. State,* 82 Md. 527, 534, 34 A.

246, 248 (1896), however, a general definition was not set forth until almost 70 years later in *Wiley v. State,* 237 Md. 560, 207 A.2d 478 (1965).

■ Maryland does not have a general statute defining the offense of attempt.[1] Rather it has adopted the common law concept that the crime of attempt consists of intent to commit a particular offense coupled with some overt act in furtherance of the intent which goes beyond mere preparation. *Young v. State, supra,* 303 Md. at 302, 493 A.2d at 354; *Hardy v. State,* 301 Md. 124, 138–39, 482 A.2d 474, 482 (1984); *Lightfoot v. State,* 278 Md. 231, 232–38, 360 A.2d 426 (1976). In the literal sense, the word attempt means to try, it implies an effort to bring about a desired result. Hence, an attempt to commit a crime requires a specific intent. *See* R. Perkins & R. Boyce, *Criminal Law* 637 (3d ed. 1982).

■ The crime of attempt is an adjunct crime, it cannot exist by itself, but only in connection with another crime. *Hardy v. State, supra,* 301 Md. at 139, 482 A.2d at 482. Furthermore, it is not an essential element of a criminal attempt that there be a failure to consummate the commission of the crime attempted. *Lightfoot v. State, supra,* 278 Md. at 231, 360 A.2d at 426. The crime of attempt expands and contracts and is redefined commensurately with the substantive offense. *Hardy v. State, supra,* 301 Md. at

---

1. While Maryland has not enacted a general attempt statute, Maryland Code (1957, 1982 Repl.Vol., 1987 Cum.Supp.), Article 27 defines various specific attempt crimes which include: § 9A (misdemeanor to attempt to burn contents of trash container); § 10 (felony to attempt to burn building); §§ 23 and 24 (misdemeanor to attempt to bribe); § 34 (felony to attempt burglary with explosives); § 45A (misdemeanor to attempt to falsify, alter or access any public record); § 119 (felony to attempt to dynamite property); § 230A (misdemeanor to attempt to obtain public assistance by fraud); § 265 (misdemeanor to attempt to remove dead body); § 290 (misdemeanor to attempt to violate controlled dangerous substances law); § 450 (felony to attempt to poison a person); § 538 (felony to attempt sabotage); §§ 562B and 562C (felony to attempt to extort $300 or more, misdemeanor if under $300).

139, 482 A.2d at 482. Therefore it is applicable to many crimes, statutory or common law. *Id.* The courts have upheld indictments and convictions for attempted murder, *Hardy v. State, supra;* attempted armed robbery, *Young v. State, supra,* and *Lightfoot v. State, supra;* attempt to commit statutory burglary, *Tillett v. Warden,* 215 Md. 596, 135 A.2d 629 (1957); attempted rape in the first degree, *Walker v. State,* 53 Md.App. 171, 452 A.2d 1234 (1982); attempted second degree rape, *Gray v. State, supra,* 43 Md.App. 238, 403 A.2d 863; attempted third degree sexual offense, *Holt v. State,* 50 Md.App. 578, 438 A.2d 1386 (1982); attempt to commit the statutory offense of escape, *Jennings v. State,* 8 Md.App. 321, 259 A.2d 547 (1969), and a substantial number of other crimes of attempt.

██ There is an exception, however, to the general rule that attempt applies to all offenses. Crimes that do not involve intent to do a criminal act generally fall outside the scope of the crime of attempt. If there is no intent to do a wrongful act, then usually there is no crime of attempt.

### III

### *Attempted Manslaughter*

██ Cox contends that voluntary manslaughter does not require proof of intent, and therefore the crime of attempt does not arise. His argument, in effect, is that voluntary and involuntary manslaughter are the same crime. This is incorrect. The distinction can best be shown by examining the elements of voluntary manslaughter not present in involuntary manslaughter. We define voluntary manslaughter as an *intentional* homicide, done in a sudden heat of passion, caused by adequate provocation, before there has been a reasonable opportunity for the passion to cool. *State v. Faulkner,* 301 Md. 482, 483 A.2d 759 (1984); *State v. Ward,* 284 Md. 189, 396 A.2d 1041 (1978); *Connor v. State,* 225 Md. 543, 171 A.2d 699 (1961); *Whitehead v. State,* 9 Md.App. 7, 262 A.2d 316 (1970); *Lindsay v. State,* 8 Md.App. 100, 258 A.2d 760 (1969); *Gray v. State,* 6 Md.App. 677, 253 A.2d 395 (1969). Involuntary manslaughter, on the

other hand, is defined as the *unintentional* killing done without malice, by doing some unlawful act endangering life, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty. *Palmer v. State*, 223 Md. 341, 164 A.2d 467 (1960); *Carter v. State*, 66 Md.App. 567, 505 A.2d 545 (1986); *Mills v. State*, 13 Md. App. 196, 282 A.2d 147 (1971); *Rolfes v. State*, 10 Md.App. 204, 268 A.2d 795 (1970); *State v. Gibson*, 4 Md.App. 236, 242 A.2d 575 (1968).

It is necessary under the prevailing decisions to distinguish crimes of intent from crimes involving criminal neglect or gross negligence. The majority of states that have affirmed convictions for attempted voluntary manslaughter have made this analysis. It is ordinarily not relevant whether the criminal activity proscribed is derived from common law interpretation or statutory definition. "[S]o long as the crime of attempt is deemed to require an intent-type of mental state, there can be no such thing as an attempt to commit criminal negligence involuntary manslaughter." W. LaFave & A. Scott, *2 Substantive Criminal Law* § 6.2 at 27 (1986).

Cases that apply the *intent* standard to crimes of attempt eliminate involuntary manslaughter, but acknowledge that attempt does attach to the generally accepted definition of voluntary manslaughter. For example, the Supreme Court of Florida, in *Taylor v. State*, 444 So.2d 931 (Fla.1983), has succinctly held:

"[T]here may be a crime of attempted manslaughter. We reiterate, however, that a verdict for attempted manslaughter can be rendered only if there is proof that the defendant had the requisite intent to commit an unlawful act. This holding necessitates that a distinction be made between the crimes of 'manslaughter by act or procurement' and 'manslaughter by culpable negligence.' For the latter, there can be no corresponding attempt crime. This conclusion is mandated by the fact that there can be no intent to commit an unlawful act when the underlying conduct constitutes culpable negligence. On the other

hand, when the underlying conduct constitutes an act or procurement, such as an aggravated assault, there is an intent to commit the act and, thus, there exists the requisite intent to support attempted manslaughter."

*Id.* at 934.

In *Anthony v. State,* 274 Ind. 206, 210, 409 N.E.2d 632, 636 (1980) the Supreme Court of Indiana considered this precise issue and stated:

"It is clear that this general attempt statute applies to any crime, limited only by the requirements of 'culpability' and 'conduct that constitutes a substantial step toward the commission of a crime.' The requirement of culpability means that there must be an intent to commit the crime and therefore it has been found there can be no crime of attempted reckless homicide. *Rhode v. State,* (1979) Ind.App. [181 Ind.App. 265], 391 N.E.2d 666. However, since both murder and manslaughter can be proved by evidence of the knowing or intentional killing of another human being, ... 'the requirement of culpability is satisfied and the crime of attempted manslaughter does exist under our present statutes.' "

The Supreme Court of Louisiana reached the same result in *State v. Harper,* 205 La. 228, 229, 17 So.2d 260, 260–61 (1944).

"The defendant's contention that the element of intent is lacking in the crime of manslaughter is equally without merit, for as expressed in Section 255 of the Fourth Edition of Clark and Marshall's *Works on Crimes,* 'In all cases of voluntary manslaughter there is an actual intention to kill, or there is an intention to inflict great bodily harm, from which such an intent may be implied. It is manslaughter, and not murder, because there is *no* malice aforethought, not because of any absence or presence of intention to kill.' "

In the several states that have rejected attempted voluntary manslaughter as a crime, the courts have indicated concern because of possible confusion with the crime of assault with intent to kill, *People v. Reagan,* 111 Ill.App.3d

945, 67 Ill.Dec. 506, 444 N.E.2d 742 (1982) *aff'd,* 99 Ill.2d 238, 75 Ill.Dec. 701, 457 N.E.2d 1260 (1983); *Commonwealth v. Hebert,* 373 Mass. 535, 368 N.E.2d 1204 (1977); *People v. Brown,* 21 A.D.2d 738, 249 N.Y.S.2d 922 (1964), or concern with lesser degrees of statutory manslaughter, *People v. Weeks,* 86 Ill.App.2d 480, 230 N.E.2d 12 (1967), or "because the specific crime of manslaughter invokes no intent and, accordingly, an intention to commit a crime whose distinguishing element is lack of intent is logically repugnant," *People v. Brown, supra,* 21 A.D.2d at 738, 249 N.Y.S.2d at 922–923.

As we recently noted in *State v. Holmes,* 310 Md. 260, 528 A.2d 1279 (1987), assault with intent to murder and attempted murder are separate and distinct offenses in this state. The contention that attempted voluntary manslaughter should not be recognized as a crime as it may be confused with assault with intent to murder, is therefore rejected.

In a review of attempted homicide offenses, we recently observed that:

"If the evidence satisfied the fact finder by proof beyond a reasonable doubt that the conduct of the defendant falls within the proscribed conduct in the statute labeled as first degree murder that did *not* result in death of the victim, the crime of attempted murder in the first degree has been established. If the evidence of criminal culpability is something less, the crime may be attempted murder in the second degree or attempted voluntary manslaughter."

*Hardy v. State, supra,* 301 Md. at 139–40, 482 A.2d at 482 (emphasis added).

■ We conclude that when an individual, engaged in an altercation, suddenly attempts to perpetrate a homicide caused by heat of passion in response to legally adequate provocation, and where the attempt results in something less than the actual wrongful killing, that person may be convicted of attempted voluntary manslaughter under the common law of Maryland.

IV

■ Finally, Cox contends he should not have been convicted under Maryland Code (1957, 1982 Repl.Vol., 1987 Cum.Supp.), Article 27, § 36B(d) of using a handgun in the commission of a crime of violence because attempted voluntary manslaughter is not a crime of violence as defined in § 441(e). That section states:

"The term *'crime of violence'* means abduction; arson; burglary, including common-law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; and sodomy; or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year."

No more specific direction is necessary to conclude the legislature intended attempted voluntary manslaughter to serve as a predicate crime of violence under § 441.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY THE PETITIONER, JEHU COX.